UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

In the matter of                    )
                                    )
VERONICA AGUILAR and JOSE AGUILAR,  )
                                    )
     Defendant-Appellants,          )    No. 14 C 5290
                                    )
           v.                       )    Judge Rebecca R. Pallmeyer
                                    )
ROBERT J. SARGIS,                   )    Bankruptcy Appeal
                                    )    Adv. Case No. 13-00299
     Plaintiff-Appellee.            )

## MEMORANDUM OPINION AND ORDER

Veronica and Jose E. Aguilar hired Victor Paredes, a mortgage broker, to secure financing for the purchase of a residential property. In addition to a first mortgage with a commercial lender, Paredes negotiated a $21,000 loan from Plaintiff Robert J. Sargis to the Aguilars. The Aguilars never made any payments on the loan and later filed a bankruptcy petition. In an adversary proceeding before the bankruptcy court, Sargis argued that the outstanding loan balance was excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because in negotiating the loan, Paredes lied to Sargis about the Aguilars' intention to live at the property. The bankruptcy court found that Paredes did lie to Sargis and that the Aguilars were responsible for Paredes' conduct under an apparent agency theory of liability. Based on these findings, the court refused to discharge the debt. The Aguilars have appealed that ruling.

The bankruptcy judge's ruling found support in case law, but a more recent decision may alter the outcome here. In *Sullivan v. Glenn*, No. 14–3213, ___F.3d ___, 2015 WL 1474684, (7th Cir. April 2, 2015), the Court of Appeals observed that, at least in the context of § 523(a)(2)(A), a principal is entitled to a discharge unless the principal "knew or should have known of the agent's fraud." *Sullivan v. Glenn*, 2015 WL 1474684 at *3 (quoting *In re Walker*, 726 F.2d 454, 454 (8th Cir. 1984)). While the evidence in this case is sufficient to establish that Paredes committed fraud, there was no finding by the bankruptcy court that the Aguilars knew

or should have known of Paredes' conduct. *Sullivan* suggests that absent such a finding, § 523(a)(2)(A) does not apply to except the debt from discharge. The court believes it appropriate to remand to permit the bankruptcy court to consider what effect *Sullivan* has on the disposition of Sargis' adversary complaint.

## **BACKGROUND**[1]

In 2006, Veronica Aguilar and Jose E. Aguilar (the "Debtors") applied for a home mortgage loan on behalf of Ms. Aguilar's sister, Susana Limon, who was unable to obtain mortgage financing because of her own poor credit history. The Debtors hired Victor Paredes, a long-time friend and member of their church, to help them find a loan. Paredes is the former president and agent of ProCasa Mortgage Corporation and ProCasa Realty and appears to have once had a mortgage broker's license, though he did not at the time these events took place. On May 15, 2006, Paredes obtained a $190,350 loan for the Debtors through BNC Mortgage, Inc., which the Debtors used to purchase a single-family residential property located at 3512 S. 61st Avenue, Cicero, Illinois (the "Property"). In exchange, BNC received a primary mortgage on the Property; the mortgage was accompanied by a promissory note. Paredes was paid for his services from the BNC loan proceeds. BNC did not require the Debtors to live at the Property—a rider to the mortgage agreement explicitly states "Section 6 concerning Borrower's occupancy of the Property is deleted." Ms. Limon did not sign the BNC loan documents or mortgage, but the plan was for Limon to live at the Property and make the loan payments—the Debtors simply acquired the loan because Limon couldn't obtain the funds herself.

Even with the BNC loan, however, neither the Debtors nor Limon had enough money to cover the closing costs or a down payment for the Property. At trial, Ms. Aguilar testified that she and Paredes talked about the need to find a private lender to secure additional funds. Paredes then searched for a private loan on the Debtors' behalf. He spoke with Plaintiff

---

[1] The facts are taken from the bankruptcy court's Amended Memorandum Opinion & Order issued on June 9, 2014, and from the record on appeal.

Robert J. Sargis, his friend from a local health club, about becoming a junior lienholder for Debtors. Plaintiff had provided similar private loans for Paredes' clients in the past  In this case, Paredes provided Plaintiff with photo identification of the Debtors and Limon and a listing of the Property. Plaintiff testified that Paredes told him that all three adults would live at the Property and pay the loan back together. Plaintiff testified that he would not have provided financing had he known that the Debtors would not live there. He explained that he told Paredes he was not interested in loaning money to real estate investors, and only made loans to people who would live at the premises because such loans are more likely to be repaid. Plaintiff also testified that he never saw the BNC mortgage rider that waived the occupancy requirement. Regardless, Plaintiff explained that based on the success of his prior transactions with Paredes, he believed that Paredes was being truthful about who would live at the Property, and he therefore agreed to provide a $21,000 private loan in the form of a second mortgage to the Debtors. The $21,000 check was dated May 11, 2006 and made payable to "Jose E. and Veronica Aguilar." At the time the loan was made, Paredes himself knew that the Debtors already owned a home located at 3837 N. Christiana, Chicago, Illinois, and did not intend to live at the Property. Nothing in the record reveals whether the Debtors instructed to Paredes to tell Plaintiff that the Debtors would live at the Property.

In exchange for the loan, the Debtors and Limon executed a note in favor of Plaintiff secured by a mortgage. The Mortgage and Note were both dated May 16, 2006, the day after the parties closed on the Property, and were signed by the Debtors and Limon. The Note's terms were for three years with twelve percent interest annum, but it did not have an express due date and did not disclose the collateral.[2] The Note and Mortgage are the only two documents memorializing Plaintiff's pre-closing down payment, second mortgage loan to the

---

[2] The loan in this case, dated after the purchase of the Property, was not reported on the HUD-1 settlement statement, and was recorded after the first mortgage. There is no evidence that BNC was alerted to this second mortgage; it is also unclear whether Plaintiff and Sargis' past transactions were structured in the same manner.

Aguilars. Neither document includes an occupancy provision or a default provision, should the Debtors and Limon fail to occupy the property together. Plaintiff testified at trial that if the borrowers had made all the monthly mortgage payments to Plaintiff, then on May 15, 2009, the day of maturity, there would be a balance of $20,741.52.[3] Under the Note's terms, the Aguilars and Limon agreed to be jointly and severally liable for the balance. Plaintiff received either 34 or 35 payments of $216.00 from Limon.

By April 15, 2009, the parties agree the Note was in default. The court is uncertain of the nature of the default, as it appears that the loan had not yet reached its maturity date and all monthly payments of $216.00 had been made on schedule by Ms. Limon, who lived in the house with her husband and children. In any event, on July 27, 2010, Plaintiff sued the Debtors in Illinois state court for the balance due. The Debtors filed for Chapter 13 protection before the state court case was resolved. After the bankruptcy court lifted the automatic stay to allow Plaintiff to pursue his claim, on July 25, 2012, the state court entered judgment in his favor against the Debtors for $32,994. The Debtors converted their Chapter 13 case into a Chapter 7 on December 13, 2012 and sought discharge of the debt owed to Plaintiff.

On May 22, 2013, Plaintiff filed an amended complaint objecting to the dischargeability of the $32,994 debt under 11 U.S.C. § 523(a)(2)(A). That section recognizes an exception to discharge for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" In his amended complaint, Sargis alleged that Paredes made false representations to him about whether the Debtors would live in the home, and that Plaintiff would not have made the loan had he known the Debtors did not intend to live there or make any payments. The bankruptcy court held a trial on the adversary complaint. There, Ms. Aguilar, Plaintiff, and Limon testified, but Mr. Aguilar

---

[3] Sargis testified that he provided loans like this to allow people to bolster their credit history. The loan recipients would then apply for a home equity line of credit and repay Sargis from those proceeds.

and Paredes did not. The court concluded that Paredes had lied to Plaintiff to induce him to make the loan to the Debtors, that Plaintiff's reliance was justified, and that Paredes's acts were attributable to the Debtors. The court therefore refused to discharge the debt. The Debtors timely filed their notice of appeal.

This court has subject-matter jurisdiction over the Debtors' appeal from the bankruptcy court's decision under 28 U.S.C. § 158(a)(1), which provides district courts with jurisdiction over appeals from "final judgments, orders and decrees" issued by the bankruptcy court. A post-trial judgment that fully determines the dischargeability of a debt, such as the bankruptcy court's judgment here, is a "final judgment" within the meaning of § 158(a)(1). *See Zedan v. Habash*, 529 F.3d 398, 402–03 (7th Cir. 2008).

## **DISCUSSION**

Generally, the court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *See In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Herman*, 737 F.3d 449, 452 (7th Cir. 2013) (citation omitted). Under the clearly erroneous standard, if there are two permissible views of the facts, a court's choice between them cannot be clearly erroneous. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013); *see id.* (reviewing courts "must be especially deferential toward a trial court's assessment of witness credibility").

The party seeking to establish an exception to the discharge bears the burden of proof. *See In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992). To meet that burden, the creditor must show that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010). To further the policy of providing a debtor a fresh start, exceptions to the

5

discharge of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir.1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994).

The Aguilars have presented a panoply of arguments in favor of discharge, but most of those arguments were not presented before the bankruptcy court and are, therefore, waived. *See In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011) ("This court has held that when an issue was not raised in the bankruptcy court, a finding that the issue is waived at the district court level is 'the correct result, since to find otherwise would permit a litigant simply to bypass the bankruptcy court.'") (quoting *Matter of Weber*, 25 F.3d 413, 415 (7th Cir. 1994))). Specifically, this court finds that the Debtors have waived the following arguments: (1) the state-court judgment was based on incorrect state law; (2) the parol evidence rule bars testimony concerning Paredes' pre-contract representations to Sargis; (3) the statute of frauds makes Paredes' oral representations to Sargis null and void; (4) Sargis has unclean hands because his loan to the Debtors was unlawful; (5) the bankruptcy court relied on inadmissible hearsay to find that the debt was non-dischargeable; (6) Plaintiff violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, by not providing the Debtors with appropriate disclosures; and (7) Paredes was an undisclosed dual agent for both parties, which voids the loan agreement. As to the arguments the Debtors did preserve concerning whether Plaintiff proved the elements of an exception to discharge under 11 U.S.C. § 523(a)(2)(A), as explained below, the court declines to address them. Supervening Seventh Circuit case law requires a remand regardless of these arguments' merits.

I.  **Bankruptcy Court Decision**

The bankruptcy court held a one-day trial on April 24, 2014, and took testimony from Ms. Aguilar, Plaintiff Sargis, and Ms. Limon. Based on the testimony and other exhibits submitted into evidence, the court concluded that the debt owed to Sargis was excepted from discharge under § 523(a)(2)(A) because, according to the court, "Paredes made false representations

6

when he told the Plaintiff that the Debtors and Limon would reside in the Property, when he knew this to be untrue. In addition, Paredes presented photo identification of the Debtors to Sargis, which created the false impression that they would reside in the property." (Bankr. Ct. Am. Mem. & Op., filed June 9, 2014, 9.) The court found these representations material, as Plaintiff explained that he would not have loaned the money to the Debtors had he known that they did not intend to live at the Property. (*Id.*) Further, the court explained,

> the representations made by Paredes were made with the intent to deceive and defraud Sargis. The Debtors admit that the Property was purchased in their name because Limon could not qualify for a mortgage loan. Ms. Aguilar testified that at the time they signed the Sargis Note they never intended to repay the loan. (Tr. 75:4-15.) When arranging the transaction with Sargis, Paredes was aware that the Debtors would not live in the Property and that only Limon would be making the payments, yet he failed to disclose this material information to Sargis. (Tr. 127:15-19.) The Court infers from Paredes' failure to inform Sargis of material facts that he acted with an intent to deceive Sargis.

(*Id.* at 10.) Lastly, the court found that Plaintiff's reliance on Paredes' representations was justified because he and Paredes had done similar deals in the past. Judge Cox noted, further, that Paredes had supplied Sargis with information (photo identification of the Debtors and Limon and a property listing) to support the notion that all three would help pay the loan, and therefore the lie was not obvious to Plaintiff. (*Id.*)

Judge Cox's written ruling referred to the Aguilars' role in the transaction with Sargis, but there is no reference to any knowledge the Debtors had of the representations Paredes made to Plaintiff in order to secure the loan. (*See id.* at 8 ("Although no evidence of a written agreement between Debtors and Paredes regarding the second mortgage was produced, Ms. Aguilar testified that she and Paredes discussed the need to procure additional financing through a private lender."); *id.* ("The Court determines that Paredes' role in seeking out and procuring mortgage financing and the Debtors' payment for his services demonstrate that the Debtors consented to Paredes' exercise of authority in procuring the Sargis loan on their behalf.").) The court nevertheless concluded that the Debtors were responsible for Paredes' actions under an apparent agency theory of liability:

7

> The Debtors maintain that they never instructed Paredes to state that they intended to live at the Property. However, under an apparent agency theory of liability, the principal is bound, "not only by the explicit authority he gives to another, but also by the authority he appears to give that party with respect to others." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill.2d 17, 31 (1999). Debtors are therefore bound by the actions of Paredes. Having consented to Paredes' exercise of authority as their agent, the Debtors cannot now distance themselves from his deceitful conduct in procuring the funds at their behest.

(*Id.* at 9.) The upshot of the bankruptcy court's analysis, then, is that regardless of whether the Debtors knew, or should have known, what Paredes said to Plaintiff to induce him to lend the money, the Debtors are liable for Paredes' actions because he was their agent. And because Paredes lied to Plaintiff, and Paredes' conduct otherwise satisfied the elements of an exception to discharge under § 523(a)(2)(A), the debt owed to Plaintiff was not dischargeable in bankruptcy. As explained below, however, a recent Seventh Circuit decision suggests the bankruptcy court's analysis may be incomplete.

## II. Recent Seventh Circuit Authority

In *Sullivan v. Glenn*, No. 14–3213, ___F.3d___, 2015 WL 1474684 (7th Cir. April 2, 2015), the debtors, real estate investors, asked a loan broker to procure a short-term loan of $250,000 on their behalf. *Id.* at *1. The broker approached plaintiff Sullivan, who agreed to make the loan. *Id.* At a meeting, the broker told the debtors and Sullivan that a bank had agreed to provide a $1 million line of credit to the debtors that would be available "in a few weeks," and that Sullivan would be repaid from the line of credit once it became available. *Id.* In fact, there was no line of credit—but the debtors believed there was and did not know their broker had lied. *Sullivan*, 2015 WL 1474684 at *1. Sullivan received promissory notes from the debtors and the broker that made them each personally responsible to repay the $250,000 loan if it was not repaid from the bank's line of credit. *Id.* The loan was never repaid, and eventually the debtors filed for bankruptcy.[4] *Id.* In his adversary action against them, Sullivan argued that

---

[4] The broker was also liable on the promissory note and filed for bankruptcy herself. The bankruptcy refused to grant her a discharge under § 523(a)(2)(A) because the

8

the outstanding debt was excepted from discharge pursuant to § 523(a)(2)(A) because the broker's fraudulent representations should be imputed to the debtors under an agency theory. *Id.* The bankruptcy court concluded that neither debtor had committed fraud, and that the broker had not been their agent, so the debt was discharged. *Id.*

The Court of Appeals affirmed the bankruptcy court's judgment, but in the process established law in this circuit that bears on the outcome of this appeal. The court first concluded that the broker was in fact the debtors' agent, and noted that a "principal is liable for a misrepresentation made by its agent if the person to whom the misrepresentation was made would have no reason to doubt that it was a true statement, authorized by the principal." *Id.* at *2.[5] Even so, the court continued, the issue is not whether the debtors were liable to Sulivan for the payment, which they obviously were (they signed a promissory note obligating them to the debt). Instead, the issue was whether their agent's fraud was grounds for denying them their bankruptcy discharge. On this point, the court concluded that "[p]roof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." *Sullivan*, 2015 WL 1474684 at *2 (quoting *In re Walker*, 726 F.2d 452, 454 (8th Cir.1984)). Because there was no evidence that the debtors actually knew or should have known of their agent's fraud, and because debtors had "not been shown to be careless in hiring and relying on [the agent]," granting the discharge was appropriate. *Id.* at *2–3.

---

court concluded she had lied to Sullivan about the line of credit to induce him to loan to the debtors. *Sullivan*, 2015 WL 1474684 at *1.

[5] Elsewhere in the opinion, the Court of Appeals steps back from a finding that the broker was in fact the debtors' agent. Instead, the Court notes that in agreeing to make the loan, Sullivan admitted that he and the broker were "very good friends," which "tarnishes Sullivan's agency theory" because he may have trusted the broker "more as a friend than as the [debtors'] agent." *Id.* at *3. This court does not read that dicta as inconsistent with the Seventh Circuit's conclusion that fraud on the part of an agent will render a debt non-dischargeable only where the debtor is aware or should be aware of the agent's fraud.

*Sullivan* is on all fours with the case before this court. Plaintiff Sargis testified in this case that he never met with the Debtors or Limon, instead relying on Paredes's advice regarding the wisdom of making the loan. The only evidence in the record shows that the Debtors hired Paredes to obtain mortgage financing—there is nothing to suggest the Debtors were aware of Paredes's means of accomplishing this task. The Debtors continue in their brief that "[t]here is simply no evidence that the Aguilars were aware" of the lies told by Paredes, "or even had reason to suspect such a lie, and the testimony of the Aguilar's [sic] lack of fraud is surely credible." (Debtors' Brief [16], 29.) Credibility determinations are the province of the bankruptcy court, but in this case, the court made no findings concerning whether the Debtors knew or should have known that Paredes lied to Sargis. *See Sullivan*, 2015 WL 1474684 at *2. Plaintiff argues that "[n]ot giving instructions to lie or knowing about the lie is irrelevant" (Resp. Brief [24], 37), but in light of *Sullivan*, the court concludes a determination concerning the Debtors' level of knowledge of Paredes's misrepresentations is necessary to resolve Plaintiff's adversary complaint.

## CONCLUSION

This case is remanded to the bankruptcy court for a determination of whether the Debtors knew, or should have known, under the rule of law pronounced in *Sullivan*, about Paredes' false representations to Plaintiff.

ENTER:

Dated: April 15, 2015

_____
REBECCA R. PALLMEYER
United States District Judge